Good morning. You can stay seated for just a minute, just to tell you a couple of things. Generally, we provide 20 minutes aside. Do not feel compelled to use it, but in addition to that, as the appellant, which I believe is you, yes, you can have an extra 5 minutes per rebuttal that we will not take out of your 20. Please keep your voices up. There's people all the way in the back, and this microphone does not amplify, it only records. Alright, so whenever the appellant is ready to begin, you may begin. Good morning. May it please the Court, Counsel, my name is Ralph Licari, and I represent the Plaintiff Appellant, in this case, Donald Moreland. We're here today asking this appellate court to reverse the circuit court order that was entered on January 5th of 2024, and the board order that was entered on December 2nd of 2022, denying the plaintiff a duty disability claim pursuant to Section 154 of Article 5 of the Illinois Pension Code. We're further asking this court to award the plaintiff duty disability benefits at 75%, retroactive to the date his medical leave was exhausted with the Chicago Police Department, which was October 9th of 2021, and attorney's fees in accordance with Section 228 of the Pension Code. As of today, Officer Moreland has been in a no-pay status since October of 2021, more than three years. I'd like to start my argument by first going over the necessary elements to prove a duty disability claim. This is conceded by the Pension Board. Number one, you have to show that the claimant is an active police officer. That was clearly established in this case. Number two is the disability due to a physical or mental incapacity as a result of an act of duty. There's no dispute, and the board's brief states, it is undisputed that the plaintiff suffered duty-related injuries to his lumbar spine and left hip. They don't concede he was disabled, but they agree that he was injured. The question I want to address now briefly is whether or not those injuries on the day of the IOD, which is February 28th, 2017, were they incurred from an act of duty. The record is clear on that. There's no dispute that on that act of duty, or on that IOD date, Officer Moreland and his partner were responding to what we call an in-progress call of a person shot. They were in a CPD police vehicle with their emergency equipment activated. Prior to arriving at the location, Officer Moreland and his partner were involved in a serious traffic crash when another vehicle struck the officer's vehicle. But really, their argument is statutory, Counsel, is that it's based on the language of 156, that it has to be proved by at least one licensed and practicing physician appointed by the board. So they're saying, we don't care what else you have. If you don't have that, we can't give you disability. And what's your response to that? My response is the Kozuckis case. That's what they said in Kozuckis. It's exactly the same case. Well, they didn't have that statutory problem in Kozuckis. They didn't have no one from the board to support the claim of disability. They never dealt with the statute in Kozuckis. They don't address the statute. Right. But it's the same statute that existed at that time. They don't have that problem in Kozuckis. They do talk about the Catch-22, which is what you're talking about, but they don't address the statutory language, which is, I think, really what the board is relying on here. I agree, Your Honor. However, the Kozuckis case was under the same statute for disability as this case. I understand, but it didn't have – in fact, in Kozuckis, the board doctor was pretty supportive of the claim and said he had reservations about returning Kozuckis to full or restricted duty, and it wouldn't be prudent to do that. So he did provide some support for Kozuckis' disability. Correct. However, he did provide restrictions. In this case – and the restrictions that he provided were restrictions wherein the police department said those restrictions do not allow you to return to work. In this case, this officer also had restrictions. So he was provided with a restriction of no gun use. So the police department could have found him a job, if they had a job that was available, that could have put him in a position to work limited duty. Well, that was – you're saying that's what Levin found, that he was – Levin found he was fully – Fully capable. Fully capable with no restrictions. Correct. The only – when we're talking about restrictions or abilities, I thought his doctor, Marjacko, is the one that says he's permanently stable, unable to safely carry and discharge. Correct. So Marjacko had a restriction of no gun use and can't work doing the duties of a police officer. It didn't restrict him from doing other duties if they could – found him a job where he did not have to carry a firearm. But just like in Kizukis, the CPD sent him to a medical, and in Kizukis, she was not cleared to go back to work by a doctor. Absolutely.  That similarity is absolutely there.  The problem is, I don't think that Kizukis was quite up against the statute quite the way you are. But how could it not be, Justice, because it's the same statute. In order to apply for disability at the time Kizukis applied and the time my client applied, it's an identical statute. So how could we separate the two when they apply for disability under the same statute? It'd be an impossibility. Yeah. And in fact, the Olicker case, which this court just decided in June, it's almost an identical case to this, and they reversed the board also. So the question is, was Officer Moreland offered an accommodation, or was he placed in a catch-22? He clearly was placed in a catch-22. He did everything he could to go back to work. He complied. The city – or not the city, the pension fund gave him a return-to-work letter telling him, here's what you need to do to go back to work. That's in the record. He followed that, applied, cooperated with Concentra. And he was denied. So we have an officer here who's injured in a line-of-duty accident, can't get disability, and can't get a pension. This is exactly what Kizukis says. And when you're saying the statute doesn't apply, Kizukis is regarding the statute because – I understand. It's the statutory language that you need the opinion of a board-appointed doctor. That's the statutory language that, in my reading of Kizukis, and I've read it, I think we all have several times, including you, I'm sure, many times, doesn't ever deal with that statutory language, which is, I think, what the board is fully relying on in your case. Well, in that case, then you could have someone who's a quadriplegic and have the pension board doctor say they can go back to work, and then – I understand. I think that's pretty absurd also. But I'm saying, what do we do with that letter? Well, I say we follow Kizukis because Kizukis doesn't say that the doctor had to give an opinion of return to work or a denial. Kizukis is very strict in that it says, if the city denies a reinstatement because of a physical limitation, then the pension board must return the officer in disability. It doesn't say what kind of disability. It says disability. And the reason they have that is because this officer would be in a no-pay status because they can't get their job. And the reason is, under Toronto and Butita, it's absurd to have the pension board determine fitness for duty. CPD is the employer. They're the only ones who are tasked and should determine whether an officer should return to work. And in this case, there's no one that's saying that my client didn't cooperate. There's no one saying that he's not injured. If the CPD would have found him a restriction or a limited duty assignment within his restrictions, we wouldn't be here today. And he shouldn't be punished because, you know, the pension board's doctor found him able to go back to work. Okay, they found him able to go back to work. He tried to go back to work. Kizukis says, in that case, if the city doesn't take him back, then he must get a disability. In the Oliper case, the same thing happened, and this court agreed. So I don't see a distinction on this one. Also, and this is an important part, too, the IME exam that was given by the board's doctor, Dr. Levin, was on May 10th of 2022. Dr. Levin was not even in possession of the note prepared by Dr. Margetco, finding my client incapable of going to work, because that note was prepared on June 13th of 2022. So when Dr. Levin offered his opinion on return to work, he had no idea that Dr. Margetco had found my client disabled, because that note was written a month later, and it was never going to end. Okay, so you've got an expert saying, one, physician, return to work. Another expert saying, no, injured, can't return to work. Well, the reason this is important is that there was reasons in there why my doctor or the client's doctor, and so Dr. Levin may have changed his opinion if he saw that. But the board can rely on the expert that they do to apply their analysis and rely on an expert. Not only can, but the statute suggests must. And rely on their board doctor. Well, in Kizukis, the court said otherwise. The court said, you have all these doctors contradicting the expert, so we disregard the expert, the board's expert. We find that the, yes, in the Kizukis case, there were many doctors, and the Kizukis doctor, his opinion was disappeared. I don't think that. That's why they gave Officer Kizukis disability. Dr. Demarest was not, or I believe was the board doctor in Kizukis. Yes. I think was, he said he would not opine one way or the other on whether he was unable to return to work. In fact, in Kizukis, it's very clear that the board doctor, Dr. Demarest, and Dr. Yapour, who was a neurologist, both cleared my client, Officer Kizukis, to return to work under certain restrictions. So they both gave her clearances to go to work, and that's the distinction in this one. In Kizukis, she was given the ability to go back to work if the city gave those restrictions. And it's, Dr. Demarest then testified, this is Kizukis case, that Kizukis could work under the following conditions. So that's right from the Kizukis opinion. And Chicago wouldn't offer those restrictions. Yes, just like in this case. But in this case, you've got an independent house neck saying, the CPD doctor doing their own assessment, saying, I'm going to rely on my assessment plus Marcello to say that Moreland can't work. Then it goes back to the Kizukis case, and it couldn't be any clearer. It says if the city will not offer the officer a job, and that's the law in Illinois. I don't know. I mean, a few weeks or a few months ago, this court reversed the board on Oliper, and we had the same issue here. I understand. No, I understand. I understand how you're reading Kizukis. I'm just wondering how you're reading the statute. Is this always the statute in battle? The statute, when I say it, the statutory language says they must rely on their own doctor. Well, as I said, in that case, then we would have cases where officers could never get disability if they're a positive allegiance. And that's what Kizukis is avoiding. Kizukis and the Toronto case, which was the predecessor to Kizukis. Kizukis followed Toronto. And it said it would be absurd to have the city, or not the city, the board make determinations as to whether someone's fit for duty. And if they are put in this catch-22, it doesn't say anywhere at Kizukis that the statute says that if they're in a catch-22, but the board's doctor does not find disability, then we can't prevent it. I know. That's what I'm saying. What do we do with the statute? Do we think this language is invalid? Do we think it can be interpreted in a way that avoids these absurd, which I agree with you, absurd applications, where you have a completely incompetent board doctor, or a board doctor who says they can work with these restrictions, but there's no job that has these restrictions, which is Kizukis. What I would ask the court right now, at the wise of today, is the Kizukis case, which says exactly what we're asking for, and that's to award a disability benefit if the officer can't get his job back. And there's all the cases that say the same thing, and none of them say that the opinion of the board's doctor would trump the city's denial. And we have no case that says that. True. We have a statute. But we have the Supreme Court telling us what to do. And that's the same statute. I feel your pain. I agree. That's what we have. But I'm just asking you what your thoughts are about what we should do with the statute. Can we interpret it in a way that is in accord with how you're reading Kizukis? Yes, because we can interpret it by saying that even if the board's doctor didn't make a determination in favor of the officer, the city of Chicago made the determination that they're unfit for duty. So maybe they're clear according to the pension board's doctor, but if they can't get their job back because they're not cleared for duty, then how could this officer not be disabled pursuant to the pension code? And you'd say Kizukis would say that because that is an unjust result that the statute does, we have to ignore the statute? Not ignore it, but you have to look at the credibility of the doctors and also the weight of the doctors and the reasons the doctors denied disability. But in the Kizukis case, it said very specifically what to do in cases where you have a conflict, where the board's doctor clears the officer, but the city says no. So in this case, we have an officer who's almost being punished because he tried to go back to work, he's injured in an act of duty, and there's nothing he can do to go back other than follow the mandate of the pension board, which says go back and try to get your job. And he did that. And so now we have an officer three years with a small child without pay, and he's doing his best to try to get a disability, and he can't get one. And the only thing we have right now is the Supreme Court. Now, there is an amendment to the statute that's going to change that shortly. It's already in the House, and it was approved by the House, and it's a bill right now to that. It's going to amend 156? It's going to say the statute or the bill says that if the city of Chicago will not reinstate an officer, then the disability, then they're found to be disabled. And so it's basically codified.  Yes. But it's not going to help you necessarily. Right. However, you know, I think this court should be bound by the Kazookas case since the facts are pretty much identical as to the procedural posture. And this board just, as I said a few months ago, agreed with Kazookas and said that's the law of the land and it's not being changed. There's no information on it that it's being changed. We have an officer here without benefits, and he did everything he was supposed to do, and then we have a board-appointed doctor who says he can go back to work full duty. That's also another thing. We have a doctor saying he can go back full duty and another doctor saying he's totally disabled from working. That in and of itself should raise red flags. And then we have the city of Chicago doctor, who's a neutral doctor in this case, not clearing him based upon, you know, diagnostic imaging, things like that. So to punish the officer, and that's what would happen here, is if he doesn't get a benefit, I think the court should clearly follow the Kazookas case because that is the Supreme Court. Now, counsel cited a ton of cases, and I can talk about those for a minute. The cases that counsel cited are Article III cases, the Komarsky and the Goodman. Those are Article III cases of the pension code, which under Article III, there's a much different standard for proof of disability. Article III, it's 3.115. In Article III, you have to have three practicing physicians selected by the board for disability, and then the other cases cited by the board are Carillo, Nowak, and Reed, which are firefighter cases, which also require three physicians. Secondly, those are different articles, and if the court or the legislator wanted the proof of disability to be the same, they would have not had different articles. Secondly, and more importantly, is that none of the cases cited by the board opine or offer any legal authority on the issue of whether the plaintiffs were offered reinstatement, which is the issue in this case. Kazookas directly addresses Article V, the Chicago Police Pension Code, directly. It's directly on point. It directly addresses the duty disability statute, and it couldn't be any clearer as to what should happen in a case like this. And I would just respectfully request that this court honor the Supreme Court's decision. It hasn't been changed, and that's the law of Illinois at this point. Any questions? Thank you. Thank you so much. I appreciate it. We'll see you after we see that. Yes. Hotline. Good morning, Your Honors. May it please the court, counsel. I am Vincent Pennelly. I represent the Retirement Board of the Policeman's Annuity and Benefit Fund in this matter. I would just start by saying that I think Your Honors have honed in on the issues in dispute in this case. Essentially, we're asking you to affirm the board and the circuit court, obviously, because there was competent evidence in the record to support the board's decision to deny this application. And the law is very clear on that, that if there is such competent evidence, then the decision must be affirmed. The issue of whether there were disputes between the doctors and what weight should be given to their testimony, of course, that's a decision for the board to make. Mr. Pennelly, can I ask you, is there a dispute that the disabling injury occurred in the performance of an active duty? That injury from February of 17, was that incurred as an active duty? There's no dispute that he was injured in that incident. And that was an active duty? Yes. Well, nobody's raising the issue of whether this occurred in an active duty. That's a separate, independent requirement. Okay. And that wasn't an issue in this case. Okay. Because the board never got there because they found he wasn't disabled. So usually the way it works is, first there's the determination, is he on duty? Is he active? Was he injured? And was it a disabling injury? And then was it performed during the active duty? So it kind of goes in that order. Here, because the determination was he wasn't disabled, then the board never reached the issue of was it duty or was it not duty? Was he ever disabled? Well, disability has a specific meaning. That's a term for the pension board because it must follow the pension code. Talk about that. A condition of physical or mental incapacity to perform any assigned duty or duties in the police service. So if you can't be returned to work in the police service because of physical or mental incapacity, isn't that disabled? If you can't go back to work, you're disabled. Well, when you're in the, and maybe this, I want to make this distinction clear because it's clear in my mind. I'm not sure if it's clear in the court's mind, but you have two different functions here. You have the fire department, which is the employer. Police, police. I'm sorry. I keep flubbing into that. I believe we can always work as a fire department. That would be a bad idea. Okay. The police department is the employer. They're charged with fitness for duty. They make determinations when they hire. Is this person, can they meet the requirements? And then they, while they're working, they make determinations if they've been injured, whether or not they can go back to work. Or do they lay up during the period when they can't work? And under the statute, they're guaranteed a one-year layup. So during that time, they're not working, they're getting paid. Right. That's all the department. That's not you. That's fitness for duty.  Then, as the courts have told us in the cases we cited in Reed and so forth, the issue of are they disabled, that's not the city's determination. That's the pension board's determination. Well, this is what you guys have been fighting about since Kazookas and through all these cases, and the courts keep telling you, no, you don't get to decide this, you know what? That's what the Supreme Court of Illinois has told you. And I guess my question is, what don't you hear about that? Well, we don't hear because it doesn't apply in this case. Okay. Because? Well, for a whole host of reasons. First of all, Kazookas is completely different. You already touched on it, the court did, in its questioning. Every doctor in Kazookas, every doctor, including two doctors from the board, Demos and I forget the second doctor who looked at her, testified she's got pain. She's got pain. It's objectively verifiable. And so when the board determines. We've read Kazookas. I promise you, we've all read Kazookas. So then the only doctor that's saying that there is no pain or that there is no issue is the board's doctor, Levin. Because then every other doctor on Moreland's side, on Moreland's side, evaluating Moreland, including Hausnacht, the CTV doctor, says unable to work. With one exception, if I might. And I have to direct you to the record on this because we argued it in our briefs. Dr. Levin reviewed the report of Dr. Goldberg. Dr. Goldberg was retained to give a second opinion by the fire department of his bag. CTV, Chicago. Yes. Sorry. I've got to stop doing that. Of the police department to give a second opinion regarding his bag. He examined him. And it's in Dr. Levin's report, the findings by Dr. Goldberg, which said he reviewed the MRI. He did a physical exam of him. And he found that the findings were essentially normal. He didn't find anything wrong with him. Now, did he give. Does he stay. He can go back to work. He doesn't really say anything about that. But he says my findings with respect to his bag are essentially normal. There's nothing wrong there that he could find. So that's independent evidence from Dr. Levin of another doctor, by the way, a licensed certified orthopedic surgeon who examined him for his bag. So that's other evidence under the statute that the board could rely on. To answer your question as far as an opinion, can he go back to work, yes. The only board-appointed doctor in this case is saying he can go back to work. Nobody can dispute that. It is what it is, as they say, as far as their opinion. My question is, when the Supreme Court is saying to you, as they say very clearly in Kazuka's, if, however, the Chicago Police Department was unable to reassign or will change Kazuka's to Moreland, reassign Moreland to a restricted duty position within his limitations, he would remain eligible for duty disability benefits. Or he would be eligible. If you can't put them back to work, the Supreme Court has said, even if somebody else made that decision, not you, the board, you've got to give that person duty disability. That's what the Supreme Court is saying. Explain to me what you think they're saying to you. Because they're saying something to you. They're saying, they're talking, I agree, Justice. To you, to you, the board. To the board, I agree with that. But there's a huge distinction here. So let's step back for a minute and look at Kazuka's. When you read that decision, you'll see that there was a history of Kazuka's, while she was on layup, going back to restricted duty work. Okay? So she was going on and off layup. They put her in an accommodated position so she could go back to work, end up doing whatever. That happened multiple times while she was on layup. Now, fast forward, it gets over to the board for disability. It's not like here where the plaintiff went back to the police department while we're in the process of a hearing. That didn't happen in Kazuka's. She didn't go back to the police department. What happened was the board argued on the appeal, basically, that, oh, by the way, if you disagree with us that there's not sufficient evidence that she was disabled, well, then they didn't prove that she couldn't do an accommodated position because there's this record of her going back in an accommodated position, even though she's having all this pain. So you're saying Kazuka's is limited to those facts? Is that what you're saying? I'm absolutely saying that because, in this case, there's no facts. The plaintiff didn't take the position that I could go back in an accommodated position. Explain to me the ruling of Kazuka's, I'm sorry, in your mind. Kazuka's only applies when an officer has gone back and forth between limited duty and full duty or limited duty and disability. Kazuka's applies when… Kazuka's would apply when an officer who applies for a disability is denied by the board, denied, goes back after the denial, goes back to the police department, I've got to write that, and says, okay, under the statute, I'm, you know, they're saying I'm not disabled. Hire me back or give me an accommodation. Let me work in a position that accommodates my issue, whatever it is. It could be either or. And the police department says no. And the police department says no. Then Kazuka's could apply. So it's all in the timing? I'm sorry, go ahead. It's the same, it is the same situation, other than the accommodation, but the accommodation is, we don't have an accommodation for you. No, yes, yes, it's a denial of any… Right, so you… Any assigned duty, whether it's accommodated or full duty. Yes, I agree. That is true. It would be a denial. But there, the officer would have options. What's the option? Well, I don't know. He could sue the police department and say, you know, bring an action and say, you know, you're wrong on this. You should hire me back. I mean, people get denied accommodations and sue in federal court all the time. That's a basis. So all I'm saying is there's steps, there's a division of responsibility here, and you need to follow that procedure, and there's remedies. There's remedies available. Counselor keeps saying, well, he was denied. There's no evidence that he went back and asked for an accommodation when they went back during this process. Put me back full duty. So Connect only evaluated, can he do full duty? She didn't evaluate, well, no, he could do an accommodated position, and therefore the city would have or should have offered him an accommodated position. She, Connect said, it's not cleared, permanently disabled, not a candidate for limited duty. That was Hoffstein, the CPD doctor. Not a candidate for limited duty. Agreed. No, that wasn't agreed. I thought you just said that he could have applied for some limited duty. No, what I'm saying is her opinion was absolute. There's no accommodated position. There's nothing available. Which brings us back to Kazookas, right? Because they're not offering an accommodation. But that's the city's issue. We don't. The pension board doesn't offer it. But it's Moreland's issue. It is Moreland's issue, that. Because that is the catch-22. But there's no evidence that Moreland applied for an accommodation. There's no evidence in this record. How could he apply for an accommodation if CPD's doctor is saying he's not a candidate for limited duty? I mean, if you did that, I think they would say, well, what part of not a candidate for limited duty did you not get? Well, I don't know the inner procedures for applying for an accommodation. And, unfortunately, there's nothing in our record that says one way or the other. See, think about this, if I may. What is the police department doctor going to say when, in the middle of a disability process, the guy comes back over to the police department and says, you know what? Put me back. And they're like, really? What's going on? Well, I'm in the middle of a disability hearing. I know that really bothers you, but he's just trying to make sure he has some source of income. I don't see what's so bothersome about him going back to the police department to see what their story is while he's in the middle of... Well, he came from the police department with a finding that he's not fit for work. But he's in the middle of the hearing, so he could tell you that. Yes, and now we're evaluating, is he disabled under the statute? That means disabled is defined in the statute as someone who is unable to perform their assigned duty or duties in the police service. So he's coming back and saying, see, I am unable to perform my assigned duties in the police department. I therefore meet this definition. Here's the problem with that, Your Honor, from a practical standpoint. You would never have hearings ever finished. This would be like a ping-pong game. Well, not every year. It is kind of a ping-pong game. No, no, I mean with every applicant, for every disability, in every pension fund. If you follow that analysis, if you follow that logic, then as soon as they come over, they see a doctor's report that says you're not disabled. Well, stop. Hold on. I'm going to go back to the employer and see if they'll hire me back. So now you've got these pension funds. They're not finishing hearings. I think that's what the Supreme Court is telling you has to happen. I don't agree with that just because the statute would say that. The legislature didn't change the statute after this. Well, Mr. Kelly, Mr. Lucari tells us that there is an amendment coming. Are you familiar with that? I am not. That's the first I've heard anything about it. But I know that there's always things bubbling in the legislature all the time with fixes and changes. But here's the important point, Judge. Similar, and this brings us back to 156, Judge, your statute. No, it's your statute. But your very good point in the beginning of the argument. How do we get around that statute? Well, 156, which is modeled after the Article VI statute, they're the same, exact same language for police and firemen. That's why I keep throwing back to firemen. In any event, in the cases we cite that you read in NOLAC, this very statutory language was addressed by the court. And in NOLAC in 2000, the court expressed the same feelings that you already said, which is, you know, this statute seems a little, you know, a little tough on the applicants. How do they get around if the board-appointed doctor says, you know, you're not disabled? But they said our hands are tied. If the legislature wants to do something with that, then they should do something with it. But in the meantime, we have to follow the statute. What happens? Legislature did nothing.  2009. Reid comes along, same argument, raising the same issues. No board-appointed doctor. And the appellate court, this court, said, we have to follow the statute, sorry. So the legislature did nothing with Article VI. Nothing. Because they felt in their wisdom when they first put the statute in effect, they had their reasons for doing it. So all I can say is, there's no argument they can make. Because they just didn't overrule the statute. If, as they say, the legislature is going to come along and say, you know what, we're going to change this, that's not for this court to consider. This court can only consider what's before you in this record and the law and the statute in effect. And they can't argue around the fact that they did not present an opinion from a board-appointed doctor that he was disabled. I'd like to just take a couple of minutes, it looks like, but real quick, a couple of things I just wanted to point out. The argument that he can't get a pension, again, that's mixing up disabilities and pensions. Two different things. It's a disability benefit. Can he get his pension? Yeah, of course, he can get his pension at any time. That's not what this is about. This is about a disability benefit. And the argument that Article 3 and 4 are completely different, that's not true. The requirement of three examinations for Article 3 and 4 is about the boards have to get three doctors to look at them. It doesn't mean there's unanimity. It doesn't say all three doctors have to agree. And the Supreme Court weighed in on that a long time ago. All they have to do is have three doctors examine them. They're ready to be given to those doctors' opinions up to the board. So virtually every pension board that has disability benefits in the state are in the same position. They get doctors' reports, like here. There was no live testimony. No doctors impeaching each other, the same thing. The board relied on the medical records, which is common and is appropriate. They made their judgment after reviewing the records in the statute. So in sum, Your Honors, we ask you to affirm the board because, A, there was competent evidence in the record to support the board's decision. That alone should be reason enough. But B, as well, is the plaintiff did not meet his burden of proof because he didn't present evidence from a board-appointed physician that he was disabled. And we think Kazuka's, I have a whole bunch of notes on it, but I know I'm out of time, is distinguishable. I do have one question. I'm sorry to let out. Sure. But board-appointed physician, and you know this process better than anybody, and certainly better than me. So the board appoints a physician. Can the officer then request another board-appointed physician? Do they have the authority to do that? Can they say, you know, that doctor's a quack. I want another board-appointed physician. Yes, I think the statute speaks to the fact that the statute says if the board requires another opinion. I'm asking if the police officer can say, I want you to get another. They don't have the right to do that. I don't think the statute. I read the statute that says the board can ask for another board-appointed physician. And if they do that, the officer has the right to pick the doctor. The board decides they want another doctor. Yes, they get to pick it, not the board. So the board, it doesn't, the statute doesn't speak to what if the officer wants it. Okay. But certainly there's no prohibition that I see in the statute. Okay. All right. Thank you very much. Thank you, counsel. Thank you. I just want to touch on a couple things that Mr. Penalty said. He said earlier if the officer is unhappy with the city not giving his job back, that he can sue the city. Well, that's actually happened in the case, and that's the Butita v. City of Chicago, which I cited in my brief. That's a federal case where Officer Butita sued the city, saying the pension board cleared me. I want you to give me my job back. That case was dismissed by the federal court. So that's already been attempted and denied. Also, I want to point out when Mr. Penalty talks about there's no evidence that after Officer Moreland was denied disability, he never sought accommodations. It's important to note that Officer Kouzoukis' evidence that there were no accommodations was presented at the board hearing by Director Scheibel from CPD. It wasn't after, so it was done at the hearing, just like in this case. There's no difference. That's part of him proving his case. Correct, correct. So there's no evidence that after she was denied she went back to the board. Also, my client did testify at the hearing, and this is page 1605 and 06 of the common law record, that no one has offered him a position in any capacity to return to work, and that if a position was offered, he would accept it. He readily testified that he would take any position, and none was offered. And also, it's important to note that not every doctor, as Mr. Penalty said, found these disabling conditions in Officer Kouzoukis. In fact, in the Kouzoukis case, it said, Dr. Spencer O'Pine, based on the pristine appearance of her MRI, that Kouzoukis' pain did not stem from an injury from her spine, and it was not incapacitating. So there were doctors that actually contradicted Kouzoukis that were not like Mr. Penalty said. Not every doctor found that she had all these pains. I would just ask, once again, the Court, please follow the case. Mr. Penalty talks about pension is different than disability. It's not, because when you're on disability, your pension gets paid into by the city, so if you don't get a disability benefit, your pension doesn't get paid, and you can't get your pension other than the time you get it. You can't get credit for that time. Correct. So if you only have eight or nine years, and then you can't work again, you can't get a disability pension. So that's not correct at all. Thank you. Thank you. Thank you both. We will take this matter under advisement. The Court is now in recess.